# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JOHN FRANCIS BUTLER,**

   **Petitioner,**

**v.**                                                                         **Case No. 8:12-cv-56-T-27TGW**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

   **Respondent.**

_____/

## ORDER

Petitioner, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). He challenges his convictions for attempted first degree murder and armed burglary, entered in the Sixth Judicial Circuit, Pasco County, Florida, in 2006. Upon review, the petition must be denied.

## PROCEDURAL HISTORY

Petitioner was charged with attempted first degree murder and armed burglary. (Dkt. 11, Ex. A1.) Petitioner entered an open plea of no contest with a cap of twenty years. (Dkt. 11, Exs. A2, A4.) Following a sentencing hearing, he was sentenced to concurrent terms of fifteen years' imprisonment, followed by five years' probation. (Dkt. 11, Exs. A3, A5.) Petitioner's convictions and sentences were affirmed on direct appeal. *Butler v. State*, 982 So.2d 20 (Fla. 2d DCA 2008). (Dkt. 11, Ex. B5.)

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which the state court summarily denied. (Dkt. 11, Exs. C1, C2.) The order of denial was

affirmed by the state appellate court.  (Dkt. 11, Ex. D2.)  Petitioner's second motion for

postconviction relief was also summarily denied by the state court.  (Dkt. 11, Exs. E1, E2.)  This

denial was affirmed on appeal.  (Dkt. 11, Ex. F2.)  In its response (Dkt. 9), Respondent agrees that

Petitioner's federal habeas petition is timely.  Petitioner was afforded an opportunity to file a reply

(*see* Dkt. 8 at p. 4), but did not do so.

## STANDARD OF REVIEW

### Standard of Review for Petitions Subject to AEDPA

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act

("AEDPA") effective April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Habeas

relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) sets forth a highly deferential

standard for federal court review of a state court's findings of law and fact.  It provides that habeas

relief may not be granted on a claim adjudicated on the merits in state court unless such

determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application" clause, a

federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Additionally, "the focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 130 S.Ct. 1855, 1866 (2010).

A state court's factual findings must also be given deference, and a petitioner bears the burden of overcoming a state court's factual determination by clear and convincing evidence.  Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner

must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the

federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the

federal source of law on which he relies or a case deciding such claim on federal grounds, or simply

by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state

remedies that are no longer available, that failure is a procedural default which will bar federal

habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice

exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause

for a procedural default, a petitioner "must demonstrate that some objective factor external to the

defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d

695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice,

a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice

but that they worked to his actual and substantial disadvantage and infected the entire trial with error

of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must

show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford*

*v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim

if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529

U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in

an extraordinary case where a constitutional violation has probably resulted in the conviction of

someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d

at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d

1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

**Standard of Review for Claims of Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner. *Id*. at 687. In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. When a petitioner enters a plea, the prejudice inquiry focuses on whether, absent the alleged ineffective assistance, the petitioner would have insisted on proceeding to trial rather than entering his plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Counsel is presumed to have provided effective assistance. *See Strickland*, 466 U.S. at 689-90. Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Sustaining a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted). If a court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## DISCUSSION

Ground Two: "COERCED, INVOLUNTARY, AND UNKNOWING PLEA" and Ground Three: "HOSTILE AND INEFFECTIVE ASSISTANCE OF COUNSEL."

In Grounds Two and Three, Petitioner asserts that counsel provided ineffective assistance, which contributed to his entering an involuntary plea. Petitioner presents several exhausted claims of ineffective assistance of counsel.[1] First, Petitioner argues that counsel was ineffective for failing to pursue an insanity defense to be presented at a trial. He asserts that he told counsel he wanted to rely on this defense at trial, but that counsel refused to do so and informed him "[s]he did not do insanity defenses." (Dkt. 2, at p. 6.) He asserts that counsel had him examined for competency to proceed, rather than for insanity.

Additionally, Petitioner claims that counsel coerced him by providing affirmative misadvice about the potential sentence he would receive. In support, Petitioner asserts that counsel advised him he would receive a sentence of twelve to eighteen months in a dual diagnosis treatment program.

---

[1]Petitioner also presents numerous claims of ineffective assistance of counsel that are unexhausted. He claims counsel was ineffective for: failing to investigate the defense of self-defense or prepare defense strategies; failing to object to the introduction of photographs of the victim's wounds at the sentencing hearing; failing to file a motion to withdraw his plea and instead filing a motion to reduce sentence; failing to inform him of the constitutional rights and protections he was waiving by entering the plea; failing to answer his questions about allegedly exculpatory forensic reports and his pre-trial detention; failing to secure his release after the court found no probable cause; failing to obtain an expert to examine him for insanity, contrary to *Ake v. Oklahoma*, 470 U.S. 68 (1985); and being evasive and showing bias and vindictiveness against him. However, these claims are unexhausted because Petitioner did not present them to the state court in his postconviction motion. (*See* Dkt. 11, Ex. C1.)

Furthermore, to the extent that Petitioner raised any of these claims on direct appeal, they are likewise unexhausted because the state appellate court rejected them without reaching the merits. Specifically, the state appellate court determined that "[b]ecause there is no ineffective assistance of counsel apparent on the face of the record ... he is not entitled to any relief on direct appeal on these issues." *Butler*, 982 So. 2d at 21. The appellate court cited *Wilson v. State*, 814 So.2d 1203, 1204 (Fla. 2d DCA 2002) ("[T]his court may not consider a claim of ineffective assistance of trial counsel on direct appeal unless the ineffectiveness is clear on the face of the record."). Therefore, it rejected these claims without prejudice to Petitioner raising them in a postconviction motion. *Butler*, 982 So. 2d at 21. Petitioner cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Accordingly, claims of ineffective assistance of counsel not raised in his postconviction motion are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not show that either exception to the procedural default rule applies. *Id.*

Petitioner states that counsel told him he would receive a life sentence if he did not take the plea. Petitioner also contends that counsel asked him what it would take for him to accept a plea offer and was merely interested in resolving his case through a quick plea.[2]

Petitioner argues that counsel's allegedly deficient performance contributed to his plea being involuntary and coerced. In further support, Petitioner states that he has a "history of severe mental illness" and that he was "mentally disordered" when he entered his plea. (Dkt. 2, at p. 7.) In his postconviction motion, Petitioner raised these allegations of ineffective assistance of counsel and asserted that counsel's deficient performance contributed to his involuntary plea. The state court denied his arguments, reasoning as follows:

> On October 27, 2006, defendant entered into a negotiated no contest plea that called for a sentencing cap of twenty years on the charges of Attempted First Degree Murder and Armed Burglary. In accordance with the agreement, the trial court sentenced him to fifteen years' imprisonment followed by five years' probation. The defendant asserts one claim which contains several allegations of ineffective assistance of counsel.
>
> First, defendant claims that counsel was ineffective for urging and misadvising him to enter an open plea. He claims that counsel advised him that the court would address his mental health and serious substance abuse issues if he pled open, nolo contendere, and would likely sentence him to 12-18 months in a Dual Diagnosis Program. However, the court instead imposed a 15 year prison sentence followed by 5 years probation.
>
> He alleges that he was resistant to the idea of pleading open to the court and wanted to proceed to trial and present the viable defense of temporary insanity but counsel refused to even consider defendant's request to proceed to trial. Defendant alleges that he would have proceeded to trial employing the viable defense of temporary insanity but for counsel's advice.

---

[2]To the extent Petitioner may now allege facts in support of his ineffective assistance claims that he did not raise in his postconviction motion, they cannot be used to support the claims raised in his federal habeas petition. Because he did not raise these supporting facts in his state pleading, Petitioner did not fairly present the federal claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (internal citations omitted).

Defendant asserts that he has a significant prior history of major mental illness with past and present diagnosis.  By his own admission, counsel had Dr. Greenburg perform a psychiatric evaluation of him while he was in jail. Furthermore, defendant admits that "counsel had the Defendant evaluated for competency", although he claims that "competency was not the issue.  The issue in this case was whether the Defendant was insane *at the time of the offense*."  However, this claim is refuted by the record.

At the departure/sentencing hearing, Dr. Greenburg testified that he had evaluated the defendant three times, February 26, 2006, October 1, 2006, and December 16, 2006.  He explained that he had diagnosed defendant with "bipolar disorder, mixed, both mixed manic and depressive features severe, post-traumatic stress disorder" but "considered him competent to proceed, sane at the time of the offense."  The doctor further testified that he went into length [sic] the somewhat complicated nature ... of trying to understand his mental state at the time.  He said "[a]nd as I said, I thought he was sane, but mentally ill.  If I can, significantly mentally ill with possible substance abuse problem, with substance abuse problem at the time of the offense.  And of course I did recommend he needs lifetime mental health treatment and of dual diagnosis nature."  When asked why he performed an MMPI in this case and whether it was standard, he said that it depended on the case. He went on to state "[a]nd your basic competence and sanity as referred to a public defender, I would say no, but this is a serious crime ... so I wanted to go the extra distance ..."  He went on to state that "[b]ut also his mental state at the time and what he said and some of those – somewhat bizarre statements that were noted in law enforcement documents, I believe they need a closer look.  I wasn't fully satisfied that I had all the information that could be obtained simply by clinical interview so I went and did the MMPI after."  Accordingly, since there is evidence that counsel did in fact have him examined to determine his mental status at the time of the offense, this part of the argument must fail.

The next part of defendant's claim is that counsel advised him that if he pled open, nolo contendere, that the court would address his mental health and serious substance abuse issues.  He again alleges that he was misadvised by counsel.  This argument must also fail.

At the change of plea hearing, defense counsel advised the court "we've spoken many, many times, and no promises have been made to him as to the downward departure.  I have no idea what the sentence that he could potentially get; he understands what the maximum penalties are; he is more than capable of reading the plea form, which he did.  I actually read it to him also to be thorough, and make sure he didn't have any questions.  He understands the maximum penalties of each; he understands that he's entitled to a trial, and that any defenses that we may have, that we can definitively use at trial, and he has declined those options, and has

decided–he believes that this down departure is in his best interest.... As matter of fact, I was out at the jail again recently, and spoke with him again just to make sure that this is what he wanted to do; he indicated that to me as well this morning.  He seemed alert and intelligent; this is definitely something that he wants to do, and he's doing it freely and voluntarily after having enough time to think about it, which I did ask him about, if he needed more time; if there was anything else that he wanted me to do before proceeding, and he has indicated to me that there isn't anything else." Defense counsel then asked, "[y]ou won't go below the 20 years, is that correct?" and the court replied, "No.  So he could have gotten up to life on these, and now the most he could get is 20 years.  Do you understand that Mr. Butler?" and he replied that he did and that the plea was in his best interest.  During the colloquey [sic] he acknowledged that he was waiving all of his rights including any potential defenses he may have.

The court then asked, "[n]ow, as we have been stating, if you got convicted of these as charged, you could have gotten up to life imprisonment; do you understand that?" and he replied that he did.  The court then said "[a]nd you do understand that the state has agreed to a 20-year cap?  So now at the sentencing hearing, the most you can get is 20 years.  Do you understand that?" and he said that he did.  He also acknowledged that the understood that the guidelines were 106.35 months.  The court then said "And quite frankly, there's a presumption that the court will give guideline sentence; do you understand that?" and he stated that he did.  The court then went on to say "[a]nd there's the possibility that I could sentence you below the guidelines for certain reasons; do you understand that?" and he said that he did.  And the court asked him if he understood that there's no guarantee of that at all, and he replied that he did understand.

Furthermore, at sentencing, when the court advised the defendant that he was being sentenced to 15 years in the Department of Corrections, followed by five years probation; there was no objection.  The court then specifically asked if there was any objection and the defendant said "no."  The court continued to explain to defendant the conditions of his probation, and then asked defendant if he had any questions, and he said that he did not.

Moreover, the court did in fact address defendant's mental health issues.  Specifically, the court found that he did require specialized treatment for a mental disorder.  The court recommended that he get mental health treatment in the Department of Corrections and be housed in a mental health facility.  The court also made it clear that that is up to the Department of Corrections.  So too, this part of the claim is also denied.

(Dkt. 11, Ex. C2)(court's record citations omitted).

The record supports the state court's determination that counsel did not provide ineffective assistance.  First, Petitioner does not demonstrate that counsel was ineffective for failing to pursue an insanity defense for trial.  Petitioner fails to present any evidence that this defense was available to him.  Under § 775.027(1), Fla. Stat., "[i]t is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane."  To establish this defense, a defendant must prove (1) he has a mental infirmity, disease, or defect, and (2) because of this condition, he did not know what he was doing or its consequences, or did not understand that what he was doing was wrong.  § 775.027(1)(a), (1)(b)(1), (1)(b)(2), Fla. Stat.  A criminal defendant bears the burden of proving insanity by clear and convincing evidence.  § 775.027(2), Fla. Stat.  While Petitioner repeatedly asserts his belief that insanity was a viable defense, he does not explain how this was so. Although he states that he has a history of mental illness, Petitioner does not allege any facts to indicate that his mental condition caused him to lack knowledge of what he was doing or its consequences, or that what he was doing was wrong.

Moreover, as the state court noted, Dr. Michael Greenburg, who examined Petitioner, testified at the sentencing hearing that he considered Petitioner's mental status at the time of the crime, and believed him to be sane but mentally ill.  (Dkt. 11, Ex. A5, at pp. 9-10.)  Dr. Greenburg also agreed that his report stated Petitioner was aware of the nature of his actions and aware of right from wrong at the time of the offenses.  (*Id*, at p. 25.)  Given this information, as well as Petitioner's failure to explain how an insanity defense would apply in his case, he does not demonstrate a basis upon which counsel should have investigated or used the defense of insanity. Similarly, Petitioner does not show that counsel was deficient for having him examined for competency to proceed, rather than insanity.  Petitioner alleges he has a history of mental illness, which could only support

counsel's motion to have him evaluated for competency.   Petitioner does not argue that the competency evaluations were detrimental to him.   Consequently, Petitioner does not show any entitlement to relief on this claim of ineffective assistance of counsel.

Additionally, the record supports the state court's finding that counsel was not ineffective for misadvising Petitioner about his sentence.   While Petitioner repeatedly alleges that counsel advised him he would be sentenced to a period of twelve to eighteen months in a dual diagnosis treatment program, he acknowledged at the change of plea hearing that there was no guarantee he would receive a sentence below the bottom of the guidelines.  (Dkt. 11, Ex. A4, at pp. 12-13.)[3]  The record indicates that Petitioner was aware he was agreeing to an open plea, the terms of which provided no sentencing guarantee other than the twenty-year cap.

Moreover, the law is clear that providing an inaccurate prediction about the sentence that a defendant will receive does not constitute ineffective assistance of counsel.  *See United States v. Himick*, 139 Fed.App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years when, in fact, he faced a ten-year minimum mandatory sentence).

---

[3]Petitioner's argument concerns the criminal punishment code scoresheet prepared pursuant to Florida Rule of Criminal Procedure 3.992(a). The scoresheet provides a "lowest permissible" sentence, also referred to as a bottom the guidelines sentence.  It appears that the scoresheet in Petitioner's case provides for a bottom of the guidelines sentence of 106.35 months.

Additionally, Petitioner does not demonstrate facts to support his allegations that counsel only wanted him to take a quick plea, and coerced him into entering the plea.  The record reflects that counsel worked on his case for a significant period of time, and that she utilized information about his personal and mental health history to present cogent argument at the sentencing hearing. (Dkt. 11, Ex. A5, at pp. 53-59, 69-71.)  Furthermore, she negotiated a plea agreement with a twenty-year cap, even though Petitioner faced a potential sentence of life imprisonment upon conviction. The record indicates that counsel spent time making sure Petitioner understood that he was not certain to receive any particular sentence under the terms of the plea agreement, and that she informed Petitioner of the maximum sentence he faced upon conviction.  (Dkt. 11, Ex. A4, at pp. 6-7.)  Moreover, Petitioner's assertions in his federal habeas petition are contrary to his sworn statements to the court at the change of plea hearing, where he indicated he was not being forced into entering the plea and expressed satisfaction with counsel's representation.  (*Id.*, at pp. 10-11.) Accordingly, Petitioner fails to demonstrate that counsel was ineffective for providing misadvice about his sentence or for coercing him to enter the plea.[4]

Because Petitioner has not shown entitlement to relief on his claims that counsel was ineffective, the portion of his claim asserting that counsel's deficiencies rendered his plea involuntary also must fail.[5]  The record further supports a finding that Petitioner's plea was

---

[4]In conjunction with his claim of ineffective assistance of counsel, Petitioner alleges that the state appellate court erred when it determined that ineffective assistance of counsel was not apparent from the face of the record.  He appears to contend that his motion to dismiss counsel, filed prior to the entry of his plea, was sufficient to prove ineffective assistance of counsel on direct appeal.  However, Petitioner has not made any showing that counsel was ineffective, and his motion to dismiss alleges no specific facts demonstrating counsel provided ineffective assistance.  (Dkt. 11, Ex. B2, at p. 25.)  Accordingly, this claim must fail.  To the extent Petitioner raises a separate claim challenging the denial of his motion to dismiss counsel, it is addressed in Ground Four, *infra*.

[5]To the extent Petitioner may attempt to raise an independent claim of involuntary plea based on facts not alleged in these claims of ineffective assistance of counsel, he is not entitled to relief because any such claim is unexhausted.  On direct appeal, the state appellate court rejected his claims of involuntary plea without reaching the

voluntarily entered.   A guilty plea constitutes the waiver of a right to trial, and "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).   Accordingly, the standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."   *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).   Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, [and] his lawyer [at a plea hearing] ... as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).   "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).   In determining the validity of the plea, a plea of nolo contendere, or no contest, is considered under the same standard as a plea of guilty.   *See Alford*, 400 U.S. at 35-37.

---

merits, finding that   "[b]ecause ... Butler did not move to withdraw his plea, he is not entitled to any relief on direct appeal." *Butler*, 982 So. 2d at 21. The decision cited *Wilson v. State*, 814 So.2d 1203, 1204 (Fla. 2d DCA 2002) ("This court on direct appeal cannot take jurisdiction over a challenge to the voluntariness of a plea unless the defendant has first filed in the trial court a motion to withdraw that plea and the trial court has denied the motion."). These claims were rejected without prejudice to Petitioner raising them in a postconviction motion. *Butler*, 982 So. 2d at 21.   Petitioner did not do so. (Dkt. 11, Ex. C1.) Petitioner cannot return to state court to file an untimely, successive postconviction motion.   *See* Fla. R. Crim. P. 3.850.   Accordingly, they are procedurally defaulted.   *See Smith*, 256 F.3d at 1138. Petitioner does not show that either exception to the procedural default rule applies. *Id.*

Petitioner signed a written plea form stating that he was entering a no contest plea with a cap of twenty years.  (Dkt. 11, Ex. A2.)  At the change of plea hearing, Petitioner told the court under oath that he had read the plea form, that counsel read the plea form to him, and that he understood the rights listed on the plea form.  (Dkt. 11, Ex. A4, at p. 9.)  When the court mentioned numerous rights that Petitioner was giving up, including his rights to present defenses and to have his case decided by a jury, Petitioner stated that he understood he was waiving those rights.  (*Id*., at pp. 9-10.)

Petitioner informed the court that he was taking medication, but indicated that it did not adversely affect his ability to understand the proceedings.  (*Id*., at pp. 10-11.)  Petitioner responded affirmatively when the court asked if his mind was clear.  (*Id*., at p. 11.)  He understood that he was eligible for an overall life sentence if he was convicted.  (*Id*., at p. 12.)  As addressed, Petitioner was aware that the bottom of the guidelines provided for a sentence of 106.35 months, but that there was no guarantee he would receive a sentence below the guidelines.  (*Id*., at pp. 12-13.)  Petitioner did not have any questions for the court after addressing this information.  (*Id.*, at p. 13.)  Additionally, Petitioner did not raise any objection to or voice any confusion concerning counsel's lengthy statements to the court indicating she reviewed the potential outcomes of sentencing proceedings with Petitioner and that he was aware that there were no guarantees or promises as to what sentence would be imposed. (Dkt. 11, Ex. A4, at pp. 6-7.)

Petitioner does not allege or demonstrate that his statements at the change of plea hearing were incorrect, or that he did not understand the proceedings or the consequences of entering a plea. Petitioner does not show that the proceedings failed to satisfy due process.  Therefore, the record supports a finding that Petitioner's plea was voluntarily entered.  Petitioner does not show that the state court's rejection of his claims was contrary to or an unreasonable application of clearly

established federal law, or was based on an unreasonable determination of the facts.  Accordingly,

Petitioner is not entitled to relief on Grounds Two or Three.

Ground One: "NO PROBABLE CAUSE DETERMINED and ILLEGAL DETENTION."

Petitioner asserts that he was unlawfully detained after his arrest.  Specifically, he alleges

that the state court found there was no probable cause to detain him and ordered him released in

accordance with state procedural rules, but that he was not released.[6]  Petitioner states that the court

made no subsequent finding of probable cause that would have permitted his detention.  He also

claims that he was denied a timely adversary preliminary hearing in violation of state procedural

rules[7] and that the State maliciously prosecuted him by filing an untimely charging document twenty-

six days after the finding of no probable cause.  Petitioner alleges that these actions violated his

federal constitutional rights.

However, Petitioner is not entitled to review of these claims.  Petitioner's voluntary plea

prevents him from claiming constitutional violations that occurred before the entry of the plea if the

actions complained of do not concern the voluntariness of the plea.  *Tollett v. Henderson*, 411 U.S.

258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact

guilty of the offense with which he is charged, he may not thereafter raise independent claims

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

Petitioner does not assert that these alleged errors rendered his plea involuntary.[8]

---

[6]Florida Rule of Criminal Procedure 3.133(a)(4) provides that if the court does not find probable cause to detain a defendant who has been arrested, the defendant must be released from custody unless a charging document has been filed, in which case the defendant may be released on recognizance.

[7]Florida Rule of Criminal Procedure 3.133(b)(1) provides that a defendant not charged through the filing of an information or indictment within twenty-one days from the date of his arrest is entitled to an adversary preliminary hearing on any felony charge pending against him.

[8]Like a plea of guilty, a plea of no contest is "an admission of guilt for purposes of the case."  *Hudson v. United States*, 272 U.S. 451, 455 (1926).

Furthermore, Petitioner cannot obtain relief because his claims involve only state law. Federal habeas relief is available to correct constitutional errors. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983). Therefore, an argument that concerns only state law is not cognizable in a federal habeas petition. *See Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). This is true even when the state law claim is "couched" in terms of federal law. *See Branan*, 861 F.2d at 1508 ("It is our opinion that the petition raises issues of state law only and, thus, must be dismissed. Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely 'couched in terms of equal protection and due process.'"); *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

Petitioner's arguments allege a lack of compliance with Florida law and procedural rules governing preliminary proceedings when a person is charged with violating state law. Accordingly, despite his assertion of federal due process violations, Petitioner's arguments do not present any constitutional question and are not cognizable in his federal habeas petition. Petitioner is not entitled to relief on Ground One.

GROUND FOUR: "UNDULY HARSH AND VINDICTIVE SENTENCE."

Petitioner claims that his sentence is vindictive and unconstitutionally harsh. Petitioner argues his sentence is vindictive because the court failed to explain why it was not imposing a downward departure sentence[9] or a sentence at the bottom of the guidelines despite the mitigating evidence presented at his sentencing hearing. In further explaining his claim, he asserts that his

---

[9]At a minimum, the sentencing court must impose the lowest permissible sentence, or bottom of the guidelines, as calculated using the sentencing scoresheet unless the court finds that the evidence supports a valid reason for a downward departure. *See* § 921.00265(1), Fla. Stat.

Page 17 of 22

sentence was longer than that contained in an earlier plea offer, as well as the sentence he understood he would receive.[10]   Petitioner argued on direct appeal that his sentence violated his federal constitutional rights because it was excessive and vindictive.  Petitioner also raises a constitutional claim in his federal habeas petition.[11]

Due process forbids vindictive sentencing by increasing a defendant's sentence because the defendant exercised a constitutional right.  *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). *Pearce* set forth a presumption of judicial vindictiveness that arises "whenever a judge imposes a more severe sentence upon a defendant after a new trial" unless the reasons for the increased sentence are apparent on the record  *Id*. at 726; *Texas v. McCullough*, 475 U.S. 134, 142 (1986). This presumption, however, has been limited to apply only in circumstances in which there is a "reasonable likelihood" of vindictiveness.  *Alabama v. Smith*, 490 U.S. 794, 799 (1989).  This is because what *Pearce* sought to prevent "was not the imposition of 'enlarged sentences after a new trial' but 'vindictiveness of a sentencing judge.'" *Id.* (quoting *McCullough*, 475 U.S. at 138.) Therefore, it is a petitioner's burden to show a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority."  *Id.* at 799.

It is not apparent how vindictive sentencing law applies to Petitioner's case.  He does not allege in his federal habeas petition that his sentence was imposed in retaliation for exercising a

---

[10]In his habeas petition, Petitioner alleges facts in support of his vindictive sentence claim that he did not raise on direct appeal, including allegations that the trial court was biased and made the initial plea offer to him.  (Dkt. 2, at pp. 11-12; Dkt. 11, Ex. B2, at pp. 17-18.)  These allegations cannot provide relief because, when a petitioner raises different supporting facts in his federal habeas petition, he has failed to fairly present the federal claim to the state court. *See Anderson*, 459 U.S. at 6. Furthermore, Petitioner alleged on appeal that the State, not the judge, made the initial plea offer for a shorter sentence.  (Dkt. 11, Ex. B2, at p. 17.)

[11]To the extent Petitioner cites *United States v. Booker*, 543 U.S. 220 (2005) to support his argument that his sentence is unconstitutionally harsh, that decision is inapplicable because it involves the federal sentencing guidelines, which do not apply to Petitioner's sentence.

constitutional right.  There was no previous conviction or sentence in this case available for him to challenge.  Petitioner was not resentenced and therefore did not receive an increased sentence. Furthermore, Petitioner entered a negotiated agreement for an open plea with a cap of twenty years with the knowledge that he was waiving his right to trial and that the court would have discretion to impose a sentence of up to twenty years.

Notwithstanding, Petitioner does not demonstrate any basis to conclude that he is entitled to relief.  The court was willing to consider imposing a sentence below the bottom of the guidelines, and the court heard all of the evidence and argument in support of a downward departure that Petitioner wished to present.  Upon reviewing the facts of the case, however, the court chose not to impose a downward departure sentence.  (*Id.*, at pp. 72-73.)[12]  The court indicated the sentence was imposed based on the facts and circumstances of the case.  (*Id.*)  The sentence fell within the terms of the plea agreement that Petitioner voluntarily accepted.  Accordingly, Petitioner's assertion that his sentence was vindictive because the court did not give reasons for the sentence provides no relief.

Moreover, a petitioner's challenge to the term of his sentence generally does not present a cognizable constitutional issue if the sentence falls within the applicable statutory range.  *See White v. Keane*, 969 F.2d 1381, 1383 (2nd Cir.1992). Petitioner received a sentence of fifteen years' imprisonment, followed by five years' probation, for each offense.  These terms are under the maximum sentences Petitioner faced upon conviction.[13]  Accordingly, he has not demonstrated that

---

[12]Before imposing sentence, the court summarized the facts of the case as follows: Petitioner called the victim and said he was a dead man; the victim later heard his window breaking; Petitioner, armed with knives, entered the victim's bedroom while the victim called 911; and Petitioner jumped on top of the victim and stabbed him in the chest repeatedly, wounding him.  (Dkt. 11, Ex. A5, at pp. 72-73.)

[13]Murder in the first degree is a capital felony in Florida.  § 782.04(1)(a).  Accordingly, attempted murder in the first degree is a felony of the first degree, punishable by up to thirty years' imprisonment.  §§ 777.04(4)(b), 775.082(3)(b), Fla. Stat.  A burglary committed while a defendant is armed with a dangerous weapon is punishable by a term of years not exceeding life.  § 810.02(2)(b), Fla. Stat.

he is entitled to relief and does not show that the state appellate court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

Lastly, to the extent Petitioner asserts that the trial court erred in rejecting his motion to dismiss counsel when it failed to comply with *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973) and *Faretta v. California,* 422 U.S. 806 (1975), he is not entitled to relief.[14]   His voluntary plea prevents him from raising this claim, which asserts errors in the proceedings prior to the plea, in his federal habeas petition.   *Tollett*, 411 U.S. at 267. However, Petitioner appears to allege that the denial of his motion to dismiss counsel caused his plea to be involuntary to the extent that he had no choice but to enter the plea or proceed to trial with an attorney he did not want.   Regardless of this assertion, Petitioner's claim cannot provide relief.

Petitioner's claim that the trial court erred under *Nelson* is not cognizable and is procedurally defaulted.   Under Florida law, when a defendant asks that his counsel be discharged due to incompetence, the trial court must determine whether adequate grounds exist to do so.   *Nelson*, 274 So.2d at 258-59.   Whether the state court complied with Florida's procedures for addressing a motion to discharge counsel is solely a matter of state law.   Accordingly, Petitioner's claim that the state court violated *Nelson* is not cognizable in Petitioner's federal habeas petition because it does not involve a federal question.   *See Branan*, 861 F.2d 1507l ; *Carrizales*, 699 F.2d 1053.[15]

---

[14]Petitioner also appears to argues the court's allegedly improper treatment of the motion to dismiss counsel reveals that the court was biased against him and imposed a vindictive sentence.   However, Petitioner does not demonstrate that the fact the court made a prior adverse ruling led to the imposition of a vindictive sentence.   Petitioner fails to establish any connection between the denial of the motion to discharge counsel and the sentence ultimately imposed.   As addressed, he has failed to show how his sentence can be considered vindictive.   Accordingly, this argument does not warrant relief.

[15]To the extent Petitioner argues that the record on direct appeal in state court did not contain a transcript that he believes would support his argument, he is not entitled to relief.   Even assuming the transcript existed and supported Petitioner's assertions, it would not entitle him to relief in his federal habeas proceeding because his allegation does not involve a federal constitutional issue sufficient to support a federal habeas claim.

Even assuming Petitioner's claim based on *Nelson* was cognizable, it would be unexhausted because he did not clearly present a constitutional question when he raised the claim on direct appeal or in his second postconviction motion. (Dkt. 11, Ex. B2, at pp. 12, 19; Dkt. 11, Ex. E1.) Because Petitioner cannot return to state court to file a successive, untimely direct appeal or postconviction motion, this claim is procedurally defaulted. To the extent Petitioner's second postconviction motion brought a constitutional claim by alleging the trial court failed to follow *Faretta* in denying his motion to dismiss counsel,[16] it is also procedurally defaulted because the postconviction court rejected this claim on a state procedural bar when it found that Petitioner's claim of trial court error should have been raised on direct appeal. (Dkt. 11, Ex. E2.)[17] Petitioner makes no argument or showing that either exception to the procedural default rule applies to these claims. Accordingly, Petitioner is not entitled to relief on the arguments raised in Ground Four.

It is therefore **ORDERED AND ADJUDGED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is hereby **DENIED**. The Clerk is directed to enter judgment against Petitioner and close this case.

---

[16]Petitioner made no claim under *Faretta* in his motion to dismiss counsel. A defendant who wishes to exercise his right to self-representation must clearly and unequivocally assert this right. *Faretta*, 422 U.S. at 835. The motion to dismiss makes no request to proceed *pro se*. Rather, Petitioner sought the appointment of new counsel. (Dkt. 11, Ex. 2B, at p. 25.)

[17]A petitioner's failure to properly raise his constitutional claim in state court in accordance with state procedures generally bars federal review of the claim in a subsequent federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) "the last state court rendering a judgment in the case ... clearly and expressly state[s] that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim"; (2) the state court's decision "rest[s] solidly on state law grounds" and is not "'intertwined with an interpretation of federal law'"; and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair" way. *Id.* (citations omitted). In Florida, claims of trial court error are properly raised on direct appeal and are therefore barred from review in a postconviction motion. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001); *McCrae v. State*, 437 So.2d 1388, 1390 (Fla. 1983). The state appellate court affirmed the application of this procedural bar. Accordingly, the claim is procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id.*; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484, or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because he has not demonstrated that reasonable jurists would find debatable whether the procedural determination that his claims were procedurally defaulted was correct, or whether the petition stated a substantial denial of a constitutional right. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on *February 27th*, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copy to:
Petitioner *pro se*
Counsel of record

SA:ml

Page 22 of 22